IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **REGINALD PERKINS,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MARTIN O'MALLEY,**<br>**COMMISSIONER OF SOCIAL**<br>**SECURITY,**<br><br>**Defendant.** | Case No. 23-CV-01548-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Reginald Perkins, represented by counsel, seeks judicial review of the final Social Security Administration decision denying his application for Disability Insurance Benefits ("DIB") benefits pursuant to 42 U.S.C. § 423. (Docs. 1, 13).

### PROCEDURAL HISTORY

Plaintiff first applied for benefits on December 16, 2021, alleging disability beginning on April 30, 2015. (Tr. 17). The claim was initially denied on March 15, 2022 and subsequently denied on reconsideration on April 11, 2022. (*See id.*). The Plaintiff filed a written request for hearing on April 18, 2022. (*See id.*). An evidentiary hearing was held via Microsoft Teams on December 13, 2022 with Administrative Law Judge ("ALJ") Matthew C. Dawson. (*See id.*). At that hearing, Perkins amended his alleged onset date from April 30, 2015 to July 28, 2019. (*See id.*). The ALJ denied Plaintiff's application on January 12, 2023 (Tr. 18–34). The Appeals Council

subsequently denied review on March 16, 2023, and the decision of the ALJ became the final agency decision. (Tr. 1–4). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

1. The ALJ failed to address an entire compensation and pension examination with medical opinion.

2. The ALJ improperly discredited Mr. Perkins' testimony based on a questionable analysis of reported activities of daily living.

## APPLICABLE LEGAL STANDARDS

Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4); *see Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024) (quoting *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001)).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski*, 245 F.3d at 886. A negative answer at any step, other than at step 3, precludes a finding of disability. *Id*. The plaintiff bears the burden of proof at steps 1–4. *Id*. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id*.

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citing *Scott v.*

*Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002); *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (per curiam); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007)).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. *See* 20 C.F.R. § 416.920(a)(4); *Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024) (quoting *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001)). He determined that Plaintiff had not worked at the level of substantial gainful activity from the alleged onset date of July 28, 2019 through his date last insured of June 30, 2021. (Tr. 19).

The ALJ found that plaintiff had severe impairments of degenerative disc disease of the spine with radiculopathy, obesity, osteoarthritis/degenerative joint disease of the knees, osteoarthritis of the hips, obesity, sensorineural hearing loss, tibial tendon dysfunction of the ankles, depression, and anxiety. (Tr. 20 (citing 20 C.F.R. § 404.1520(c)). The ALJ also stated that medical evidence reflects that Plaintiff has been diagnosed with obstructive sleep apnea and prostatic hyperplasia, neither of which is severe. (*See id.*). While the Plaintiff alleges neuropathy in his hands, the ALJ found that there is no objective evidence supporting this diagnosis. (*See id.*).

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform medium work, except he can occasionally balance, stoop, kneel, crouch, crawl, and climb. The ALJ found that Plaintiff can tolerate a moderate noise level intensity and can tolerate frequent interactions with supervisors, coworkers, and the general public. (Tr. 22). Based on the testimony of the vocational expert ("VE"), the

ALJ concluded that Plaintiff was able to do his past relevant work, while also making an alternative finding that he was able to do other jobs at the medium exertional level which exist in significant numbers in the national economy. (Tr. 28–29).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The Court finds that the ALJ's summary of the record in his decision, when compared with the issues raised by Plaintiff, is sufficiently comprehensive. The Court will, however, note some key findings.

### I. Agency Records

Plaintiff was born on June 9, 1962 and received a high school diploma. (Tr. 28–29, 41–42). In his function report, Plaintiff stated that he had problems standing for more than two hours in an eight-hour period, that he could not lift or carry more than 20 pounds, that he has difficulty concentrating, and that he cannot kneel or crunch and that bending is painful. (Tr. 214). He alleged that pain throughout the night interrupts his sleep. (Tr. 215). He stated that he could no longer perform the functions of his construction job. (Tr. 214). Plaintiff acknowledged that he could still cook simple meals and drive short distances. (Tr. 216–17).

### II. Evidentiary Hearing

At the evidentiary hearing conducted by the ALJ on December 13, 2022, a VE testified. Plaintiff's attorney did not raise any objections to the VE serving as a vocational expert. (Tr. 58). The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment (Tr. 58–59). The VE testified that this person could perform Plaintiff's past relevant work and he could perform jobs at the

medium exertional level, specifically a linen room attendant, patient transporter, and laundry marker. (Tr. 59–60). He also testified that there were 64,000, 34,000, and 55,000 jobs available in the national economy for these three positions, respectively. (*Id.*). Plaintiff's attorney asked the VE "if the claimant had to sit even two hours out of the eight-hour period, would either of those past jobs be able to be performed?" (Tr. 62). The VE responded in the negative. (*See id.*). Plaintiff's attorney asked whether any of the other medium-level occupations could be performed by the hypothetical individual under the same conditions, to which the VE also answered in the negative. (Tr. 62–63). Plaintiff's counsel also asked whether medium-level occupations would remain if the lifting requirements were reduced to twenty pounds; the VE answered that they would not. (Tr. 63). Plaintiff's attorney then said she had no further questions for the VE. (*See id.*). Counsel did not object to the VE's testimony at the hearing.

### III. Medical Records

On February 11, 2029, about six months prior to his alleged onset date, Reginald Perkins visited his primary care provider for various ailments including tinnitus of both ears, degenerative disc disease of the lumbar spine, and osteoarthritis of his left knee. (Tr. 360). He was advised to continue his medications for all conditions to which this was applicable. (*See id.*). He saw his primary care provider again on May 14, 2019 with the chief complaint of worsening numbness in his hands and fingers causing him to drop items. (Tr. 354). He also stated that he had a cough that started 2 weeks before his appointment. (*Id.*). He was prescribed antibiotics and x-rays of his spine were ordered. (Tr. 355). He returned to his primary care provider

on August 20, 2019 with the chief complaint of back spasms as well as continuing neuropathy of his hands and new neck pain. (Tr. 352). He told his physician he was using Vicodin for pain and was continuing all of his other medication; Perkins was prescribed Flexeril for his back spasms, as well. (Tr. 352–53). The physician noted that Perkins was scheduled for an MRI the following week. (Tr. 353). Perkins's next visit was on November 20, 2019. (Tr. 350). He advised his primary care provider that he was still having lumbar spine and knee issues and that his feet were painful. (*Id.*). His physician reviewed his x-rays with him and discussed his symptoms. (*Id.*). He informed his physician that he was taking his medications as prescribed but was noted to be "anxious and nervous." (*Id.*).

Perkins continued to report increased back pain and knee pain, including that it interfered with his sleep. (Tr. 347, 344). He also stated in May 2020 that his depression was under control. (Tr. 344). He reported the knee pain as being much worse after falling down the stairs and that there was "a catching in the knee when walking." (Tr. 340). Perkins reported on August 24, 2020 that he was diagnosed with a torn meniscus, but that the pain improved 70% after receiving a cortisol injection from his primary care provider on July 9, 2020. (Tr. 337, 298, 296). Perkins saw Dr. Michael Hughes, an orthopedic surgeon, for management of his knee pain and expressed interest in conservative, non-surgical management. (Tr. 299). Perkins reported the back and knee pain as being worse in September 2020, December 2020, July 2021, and October 2021. (Tr. 334, 331, 326, 323). Perkins stated that his back pain and knee pain were under control in April 2022, June 2022, and July 2022. (Tr.

573, 577). Perkins also saw a podiatrist who diagnosed him with bilateral heel pain. (Tr. 270–88). Perkins's VA medical records were also provided. (Tr. 382–572).

## IV. State Agency RFC Assessments

On March 11, 2022, state agency physician Dr. Ranga Reddy assessed Perkins's physical RFC based on a review of medical records. (Tr. 68–73). He found that "[t]here is insufficient evidence to determine the maximum remaining functional capacity prior to DLI." (Tr. 71).

State agency physician Dr. Calixto Aquino assessed Perkins's RFC based on a review of medical records and agreed with Dr. Reddy that "there is no information in file prior to date last insured regarding the claimant's gait, range of motion of the right knee, cervical and lumbar spine, ankles or hips" and that "[t]here is insufficient evidence to determine the maximum remaining functional capacity prior to DLI." (Tr. 77). Both analyses applied both to Perkins's physical symptoms as well as to his mental symptoms (for depression).

## ANALYSIS

Plaintiff claimed he suffered from a variety of physical and mental ailments that, in conjunction, prevent him from being able to perform medium work as indicated by the VE's testimony. (*See* Doc. 13, pp. 13–14 (citing Tr. 62)). Additionally, Perkins states that the VE testified that Perkins does not have any transferable skills to the light range of work. (*Id.*).

This Court reviews the Commissioner's decision to ensure that it is supported by substantial evidence and that no mistakes of law were made. However, the scope

is limited and review is deferential. The record indicates that the ALJ's findings were supported by substantial evidence and that he did not commit any errors of law.

I.   RFC

Plaintiff argues that the ALJ failed to adequately develop the record by obtaining all his relevant medical records; specifically, he argues that the ALJ failed to address an entire VA compensation and pension examination with medical opinion. (*See* Doc. 13, p. 5).

An ALJ has an independent duty to develop the record fully and fairly. 20 C.F.R. § 404.1512(b). "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits [internal citation omitted]." *Sims v. Apfel*, 120 S. Ct. 2080, 2085 (2000). While that duty is enhanced where plaintiff was *pro se* at the agency level, it is not eliminated where a claimant had counsel. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("This duty is enhanced when a claimant appears without counsel.").

Citing *Bates v. Cohin*, 736 F.3d 1093, 1099 (7th Cir. 2013) and *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)), Perkins argues that the ALJ's failure to consider the VA compensation and pension examination from 2015 is evidence of "cherry-pick[ing]" evidence. (Doc. 13, pp. 8–9). Perkins indicates that "[t]his examination is relevant because it occurred a few months after the claimant stopped working." (*Id.*, p. 8). Perkins argues that the failure to consider this decision requires this case to be remanded to the ALJ. (*Id.*, p. 14).

The Commissioner responds by citing 20 C.F.R. § 404.1504 for the proposition "that we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." (Doc. 18, p. 4 (citing 20 C.F.R. § 404.1504)). The regulations do state that "we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim." (*Id.*). Notably, 20 C.F.R. § 404.1504 also states that this analysis applies to "claims filed . . . on or after March 27, 2017."

In the instant case, the ALJ stated that he had "reviewed and considered the claimant's VA disability rating assessment (e.g., Exhibits 1D; 4F), but these are neither valuable nor persuasive under our current rules and require no further evaluation." (Tr. 27; *see* Doc. 18, p. 4 (citing the same)). Thus, the ALJ both reviewed and cited the VA compensation and pension documentation in his opinion. (Tr. 27). As noted above, ALJs do not analyze decisions made by other federal agencies operating under separate regulatory schemes. *See* 20 C.F.R. § 404.1504. Moreover, the compensation and pension examination in question was conducted in 2015, four years prior to Perkins's alleged disability onset date of July 28, 2019. (Tr. 17). As the Commissioner notes, "Plaintiff does not explain how this evidence related to his claim that he became disabled—as defined under the Social Security Act—starting in July 2019." (Doc. 18, p. 4).

While Perkins argues that "the ALJ failed to build a logical bridge from the evidence to his ultimate conclusion," it is clear that the ALJ supported his decision with substantial evidence. As a result, Perkins cannot overcome the substantial evidence standard, under which a Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Therefore, Perkins's argument here fails.

## II. Credibility

Plaintiff additionally argues that the ALJ inappropriately "discredited" Perkins's testimony because of "a questionable analysis of reported activities of daily living." (Doc. 13, p. 9).

The Seventh Circuit has held that "[c]redibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (quoting *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). However, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (quoting *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994)).

The ALJ's credibility assessment need not be "flawless;" it passes muster if it is not "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). The analysis is deemed to be patently wrong "only when the ALJ's determination lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–414 (7th Cir. 2008).

Generally, an ALJ's credibility analysis will be upheld "if the ALJ provided specific reasons for discrediting the claimant's testimony." *Ronning v. Colvin*, 555 Fed. App'x 619, 623 (7th Cir. 2014).

Perkins argues that the ALJ's determination that "[t]he medical evidence does not support a finding that the claimant requires any additional limitations" was "an egregious example of using mundane and trivial activities of daily living to undermine a claimant's testimony and complaints about his limitations." (Doc. 13, p. 10 (quoting Tr. 26)). Perkins argues that "[i]t is not reasonable to draw any inferences about the ability to perform medium work because an individual can: 1) bath, dress, and toilet with difficulty; 2) drive short distances; 3) sometimes get on a riding lawnmower; 4) watch television; 5) make a sandwich and use the microwave; and 6) attend medical appointments." (*Id.*, p. 13). Perkins argues that "[e]ven if these activities were indeed representative of a high level of activity, this would not automatically support the ability to perform gainful activity" and that conclusion is "not harmless error." (*Id.*).

The Commissioner argues in response that the "ALJ reasonably considered Plaintiff's daily activities as one of several factors in evaluating Plaintiff's claim that his symptoms were disabling" and that "[a] review of the ALJ's decision shows that he considered the medications and other treatment Plaintiff received for his impairments, objective test results, and treatment notes." (Doc. 18, p. 6). The Commissioner argues that the ALJ "noted specific inconsistencies between Plaintiff's reported symptoms and the medical evidence" including the following:

> (1) Plaintiff presenting to an exam using a cane for his left knee, but the examiner observed he was using the cane in a way that would benefit his right leg instead; (2) an examiner observing an exaggerated response from Plaintiff during an exam where the examiner noted Plaintiff would have had to flex his knees more to get out of a car, which Plaintiff was able to do; (3) Plaintiff's reports of dropping things due to numbness, ankle pain that was very limiting, and difficulty hearing a conversation if he was not looking directly at the speaker, but no corresponding evidence of treatment for these complaints.

(*Id.*, pp. 6–8 (citing Tr. 26, 352–54, 401, 478–79)). The Commissioner argues that "[t]his Court should not disturb the ALJ's subjective symptom evaluation because the ALJ followed the applicable regulations and ruling in considering Plaintiff's reports against substantial record evidence." (*Id.*, p. 7 (citing *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (courts do not "reweigh the evidence or substitute [its] judgment for that of the ALJ"))).

Here, the ALJ gave specific reasons why Plaintiff's functioning was inconsistent with his allegation of disability. It is evident that he considered the appropriate factors and built the required logical bridge from the evidence to his conclusions about Plaintiff's claims. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). Given this, the ALJ's consideration of Plaintiff's self-reported activities (e.g., the fact that Perkins can drive a ride-on lawnmower, cook simple meals, and go to medical appointments) compared to his medically evaluated disabilities is harmless error at most, regardless of Perkins's arguments to the contrary. Therefore, the ALJ's credibility determination stands.

## CONCLUSION

After careful review of the record, the Court is convinced that the ALJ committed no reversable errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to close this case and enter judgment in favor of the Defendant.

**IT IS SO ORDERED.**

**DATED:  August 5, 2024**

> s/ *Stephen P. McGlynn*
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**